## PACE v. WIGHT.

### SYLLABUS BY THE COURT.

1. The curative provision of section 25, c. 22, Laws 1899, relative to tax sales, does not apply to jurisdictional defects.
P. 279

2.    The fact that property was in fact sold for delinquent taxes is jurisdictional; for, if no sale in fact occurred, the bases for the subsequent proceedings would not exist.    P. 279

3.    The proceedings on which tax sales depend are to be proved by the records or by the originals from which the records should be made up.    The fact that real estate was sold for delinquent taxes must necessarily be established by the record, and cannot be proved by the parol evidence of the county treasurer who made the sale.                    P. 280

4.    Section 23, c. 22, Laws 1899, requires the collector to keep a book of sales containing the date of sale, description of the property sold, name of the purchaser, and amount for which sold.    Section 22 of the same act provides that, where property is struck off to the county, the collector shall make an entry, "Sold to the county," on the tax roll opposite the tax.    It is the duty of the county treasurer making the sale to record the facts in the official record, and such entry cannot be made by the successor in office of the county treasurer who made the sale, such successor having no personal knowledge of the fact recorded, and there being no memorandum from which to make the same.                    P. 280

5.    It is essential to the official character of official registers that the entries in them be made promptly, or at least without such long delay as to impair their credibility, and that they be made by the person whose duty it was to make them and in the mode required by law, if any has been prescribed.                    P. 280

PARKER, J., dissenting.

## On Rehearing.

6.    The Legislature may pass a retroactive law operating on property belonging to the state, and such law will not be unconstitutional so long as private rights are not infringed.
                    P. 287

7.    Where a tax sale certificate is held by a private individual, the purchaser has a vested right to a deed at the time specified in the law under which the purchase was made, and the Legislature cannot subsequently extend the period of redemption, as such extension would be an impairment of the obligation of the contract.    But this rule is held not to apply where the state itself is the purchaser at the tax sale, as the extension of the time in that case is not a violation of contract rights, but an act of grace.                    P. 287

8.    Chapter 22, Laws 1899, which provide that the owner of land might redeem from a tax sale at any time within three years from the date of sale, was specifically repealed by chapter 84, Laws 1913.    Under the later act it was provided that the owner might redeem at any time within three years from the date of recording the certificate of sale.    **Held,** that the later act applied to certificates of sale held by the county ac-

quired under the former law, and that the owner was en-
titled to redeem at any time within three years from the re-
cording of such certificate of sale.                    P. 288

Appeal from District Court, Union County; Leib,
Judge.

Suit to quiet title by Susie S. Pace against Mark D.
Wight. Judgment for defendant, and plaintiff appeals.
Affirmed.

O. P. EASTERWOOD, of Clayton, for appellant.

L. H. LARWILL, of Denver, Colo., for appellee.

### OPINION OF THE COURT.

ROBERTS, J. This suit was instituted in the court
below by appellant to quiet her title in and to certain
real estate situated in Union county. Appellee answered,
setting up the fact that he was the owner of the land by
deed from one Lenora Sullivan; that appellant claimed
title under a tax deed which was alleged to be invalid on
various grounds, the principal one being that the tax
certificate upon which the deed was based was not made
by the collector in office at the time said sale was held, or
by any of his deputies. In other words, the validity of
the deed was attacked on the ground that it was based
upon a void certificate of sale. Another defense set up
was, that under chapter 84, Laws 1913, the owner had
the right to redeem the land at any time within three
years from the date the certificate of sale was recorded,
and that proper tender had been made within such time.

To the answer appellant demurred, and, her demurrer
being overruled, she filed a reply. The facts may be
briefly stated as follows:

The land in question was listed for assessment in the
year 1909. Taxes were levied thereon, and remained un-
paid, and the land was advertised for sale. This much
is shown by the record evidence introduced by the plain-
tiff at the trial.

Appellant then introduced R. Q. Palmer as her witness, who testified that he was county treasurer of Union county from 1909 to January, 1912. He also testified that the land was advertised for sale for delinquent taxes together with other real estate; that it was all offered for sale on the 15th day of January, 1911; that there were no bidders for the land in question; and that he thought he thereafter struck it off to Union county. He made no record whatever of the transaction. In January, 1912, Nestor C. De Baca became county treasurer, and on March 4, 1913, De Baca or one of his deputies marked on the roll opposite this land the words, ''Sold to the County,'' and at the same time a record was made in the treasurer's record of delinquent tax sales showing a sale of the land to the county on January 15, 1911. At the same time he made a certificate of sale in which he recited that he, Nestor C. De Baca, did, on January 15, 1911, sell the land in question to the county of Union. The certificate was signed by him, and was indorsed ''March 4, 1913, as for January 15, 1911.'' This certificate was not recorded until September 17, 1915. The court refused to find that a sale of the land for taxes to the county was made, and entered judgment for the appellee.

[**1, 2**] But two questions will be considered here, one being decisive of the case, and the other being determined because fairly presented and of great public interest. The first question is as to whether or not the evidence established the fact that a sale of the land in question for delinquent taxes actually occurred. If no sale was in fact made, title did not pass to the county, and the attempted issuance of the certificate of sale and its subsequent assignment to Gow, through whom appellant obtained title, would be a nullity. The taxes were levied and the sale was made, if there was a sale under the provisions of chapter 22, Laws 1899. Under section 25 of that chapter it is provided:

"And no bill of review or other action attacking the title to any property sold at tax sale in accordance with this act shall be entertained by any court, nor shall such sale or title be in-

validated by any proceedings except upon the ground that the taxes, penalties, interest, and costs had been paid before the sale, or that the property was not subject to taxation.''

The effect of this curative provision has been before this court in several cases. It was first considered in the case of Straus v. Foxworth, 16 N. M. 442, 117 Pac. 831. It was there held that the sale vests a title in the purchaser which can be invalidated only on the ground that the taxes, penalties, interest, and costs have been paid before the sale, or that the property was not subject to taxation, and that it could not be invalidated for irregularities in the proceedings leading up to the sale unless they were fraudulent or amounted to jurisdictional defects. The rule in this case was followed in the later cases of Maxwell v. Page, 23 N. M. 356, 168 Pac. 492; Hiltscher v. Jones, 23 N. M. 674, 170 Pac. 884; Knight v. Fairless, 23 N. M. 479, 169 Pac. 312. In all of these cases it is conceded that jurisdictional defects are not cured by the curative provisions of the statute. In other words, it is essential that the property should have been listed for taxation, and that the tax should have been laid.

The fact that the property was in fact sold for delinquent taxes is likewise jurisdictional; for, if no sale in fact occurred, the basis for subsequent proceedings would not exist. In Black on Tax Titles, § 452, the author sets out the indispensable requirements essential to constitute a valid exercise of the taxing power, without which no tax sale could be validly made, which is as follows:

"First, that a tax has been levied; second, that the property sold is subject to taxation; third, that the property has been assessed; fourth, that the taxes had not been ·paid; fifth, a statutory warrant for the sale; sixth, a sale made under such warrant.''

"The proceedings on which tax sales depend are to be proved by the records or by the originals from which the records should be made up." Black on Tax Titles, § 446.

[3-5]   The fact that real estate was sold for delinquent taxes must necessarily be established by the rec-

ord, and cannot be proved by the parol evidence of the county treasurer who made the sale. Section 23, c. 22, Laws 1899, provides:

"The collector shall keep a book of sale containing the date of sale, description of the property sold, name of purchaser and amount for which sold."

Section 22 of the same chapter provides that, when there are no bidders for real estate offered for sale, it shall be struck off to the county, and that the collector shall make an entry, "Sold to the County," on the tax roll opposite the tax. The book of sales required by section 23 is intended to provide an official record of the sale and to give information to the public and to the party whose property has been sold of such fact. It is the register wherein the collector records the fact known to him and done by him, or under his direction, that he has sold the real estate therein described to the county or to the individual purchaser who may have bought at the sale; it is designed to afford evidence of the official act, and in order to be competent evidence and establish the fact recorded therein, it is essential that the entry should have been made by the person whose duty it was to do so. In other words, the entry should be made by the party who performed the act recorded. In Greenleaf on Evidence (16th Ed.) vol. 1, § 485, the author says:

"It is deemed essential to the official character of these books that the entries in them be made promptly, or at least without such long delay as to impair their credibility, and that they may be made by the person whose duty it was to make them and in the mode required by law, if any has been prescribed."

In Jones on Evidence, vol. 3, § 509, the same rule is announced.

In the case of Warren v. Bray, 8 B. & C. 813, 108 Eng. Reprint, 1245, the question arose as to the admissibility of a register in evidence for the purpose of establishing the date of birth; the entry not having been made by the minister of the parish at the time the act occurred, but by his successor in office. The court said:

"The register ought not to have been received in evidence. Registers should be made up promptly, and by the person whose duty it is to make them up. The register of baptism in this case purports to bear date the 6th of February, 1776, but it was not made up till June, 1777, and then it was made up not by the person who was minister of the parish at the time of the baptism, or by a. person who appeared at that time to have any connection with the parish, but by one who afterwards became the minister of the parish. It must be taken, therefore, that he made this entry after the death of the minister of the parish who was present at this baptism. He was recording a fact, therefore, not within his own knowledge, but one of which he received information from the clerk."

The same facts substantially exist in the present case. Palmer was the treasurer who is supposed to have made the sale, and, if made by him, it was his duty to have recorded the fact. He failed to do so, and left no written memorandum or evidence of any kind of the fact that he had made the sale. His successor in office, without any personal knowledge of the matter whatever, made the record show that a sale had in fact taken place some two years and three months prior to the entry of the record, a fact wholly without his knowledge, and which, if it had occurred, it was the duty of his predecessor to have recorded. De Baca had no authority to make the entry, and the record thus afforded no evidence of the fact that a sale took place, thereby justifying the issuance of the certificate of sale, and the subsequent proceedings wholly failed to show that a sale of the land in question to the county actually was made.

It would lead to manifest injustice and afford ample opportunities for fraud to announce a rule that would justify such a proceeding. The owner of real estate might examine the records in the treasurer's office from time to time and fail to find any record showing that his property had been sold for taxes. After the time had expired for redemption, in case a sale had actually been made, the county treasurer or his successor in office might make up a record, issue a certificate of sale to the county, assign the certificate to a private individual, issue a deed, and take from the landowner his real estate, and he would be without remedy. In Minnesota (Smith

v. Lambert, 68 Minn. 313, 71 N. W. 381) it is held that a
certificate of sale required to be issued by the county
auditor to a purchaser at a sale of forfeited lands to the
state is not valid unless executed at the time of sale or
within a reasonable time thereafter. Many Minnesota
cases will be found collected and discussed in this opin-
ion, all to the same effect.

It is not necessary for us to follow or approve the rule
adhered to by the Minnesota courts. If the record of the
sale had been made by the county treasurer who made
the sale, it is probable that his successor could have legal-
ly issued the certificate of sale; but here the succeeding
treasurer not only issued the certificate of sale some two
and a quarter years after the sale is supposed to have
occurred, which would have been invalid under the rule
announced by the Minnesota courts, but he made up the
record upon which the certificate was issued. We think
the court below properly refused to find that a sale in
fact had taken place, and for this reason the judgment
will be affirmed.

There is another question which should be considered
because of the public interest, and that is as to whether
the owner of land sold under the law of 1899 has a right
to redeem within three years from the date of the sale
as provided by that law or whether the right of redemp-
tion is governed by chapter 84, Laws 1913. The former
act authorizes redemption within three years from the
date of sale. The latter act authorizes redemption with-
in three years from the date the certificate of sale is re-
corded. As the certificate in question was owned by
Union county, it is undoubtedly true, as contended by
appellee, that the state could pass a retroactive law deal-
ing with such property and the right of redemption. 8
Cyc. 902; 6 Am. & Eng. Ency. of Law, 940; Commis-
sioners v. Lucas, 93 U. S. 108, 23 L. Ed. 822.

The question remains, however, as to whether the Leg-
islature intended that the latter act should apply to cer-
tificates of sale theretofore issued to and held by the

various counties. Section 38 of the latter act provides that the county shall give to the purchaser a certificate of sale, and that such certificate must be recorded, and that redemption may be made at any time within three years from the date of recording such certificate, or duplicate certificate, provided for in section 36 of said act. The provisions of said section as to what the certificate shall contain, where it shall be recorded, and how it can be redeemed apply solely to certificates thereafter issued.

It is our opinion that certificates issued under the 1899 law are controlled by that law. It is only certificates issued by the collector ''under section 36'' of said act that must be recorded and from which the former owner may redeem within three years from the date of the recording of such certificate. Sections 4100 and 4101 of the Compiled Laws of New Mexico 1897 were in force at the time of the said tax sale and at the time the right of redemption therefrom expired, and these sections were not repealed by the 1913 law. Section 4100 provided for the issuance of a tax deed three years after the date of sale. Section 38, c. 84, Laws 1913, provides:

"Such former owner may at any time, within three years from the date of recording such certificate, or duplicate certificate, provided for in section 36 thereof, redeem the property."

To construe said section 38 as applying to certificates issued under the 1899 law would be to make it conflict with and nullify said section 4100. It is the duty of the court to give force and effect to both sections.

In the case of Crane v. Cox, 18 N. M. 377, 137 Pac. 589, it was held that the act of 1913 should be limited to prospective operation. It is a general rule of law that statutes are to be construed as prospective, and not retrospective, unless constrained to the contrary course by the rigor of the phraseology. 1 Cooley on Taxation, 495. In the case of Smith v. Auditor General, 20 Mich. 398, in an opinion written by Justice Cooley, it was said:

"We do not understand it to be questioned that it was competent for the Legislature to make the general provisions of

Pace v. Wight, 25 N. M. 276.

the act of 1869 apply to the taxes previously assessed and re-
turned, so far as the subsequent proceedings to be taken by
the state were concerned, if they had seen fit to do so.    The
question is whether they have expressed an intention to that
effect.    Unless the intention distinctly appears, the familiar
rule of construction which presumes that legislation is de-
signed to have prospective operation only will require the
court to hold that the legislative purpose was that this act
should apply only to the taxes subsequently assessed."

In the case of Blakemore v. Cooper, 15 N. D. 5, 106 N.
W. 566, 4 L. R. A. (N. S.) 1074, 125 Am. St. Rep. 574,
the court cites a great many cases in support of the rule
that the repeal or revision of a statute is to have pro-
spective operation only, unless the intent of the Legisla-
ture to the contrary clearly appears.    There is nothing
in the act under consideration which makes it clearly ap-
parent that it was the intention of the Legislature that
the redemption feature should apply to sales made under
the former statute.

We conclude that said section 38 of the Act of 1913
does not act retrospectively and does not in any way
affect or refer to tax certificates issued under the 1899
law, and does not extend or revive the right of redemp-
tion on certificates issued under said law.

For the reasons stated, the judgment of the district
court will be affirmed; and it is so ordered.

HANNA, C. J., concurs.

PARKER, J.  I dissent.  The act of 1913 was intended
to have a retroactive effect and to govern all cases in re-
gard to the right of redemption.

On Rehearing.

ROBERTS, J.  In the original opinion the judgment
of the lower court was affirmed on the ground that the
evidence failed to establish the fact that a sale of the
land in question for delinquent taxes actually occurred.
Appellant has filed a motion for rehearing, in which she
points out that this was not an issuable fact in the case,

because appellee in his answer expressly alleged that the property had been sold for taxes, under which sale and the deed issued thereon appellant was claiming title to the land. The court overlooked this admission in the answer, and the oversight was occasioned by the fact that in this court the case was argued orally on behalf of appellee and was submitted by appellant on briefs. In the oral argument appellee stressed the fact that the evidence failed to show a sale, and upon examining the transcript of evidence we found this contention was correct. It is only fair to appellee, however, to say that there was no intention upon the part of his counsel to mislead the court. His statement was a prelude to a discussion of the effect of the tax sale certificate issued more than two years after the sale, and the failure of the county treasurer to make the required entries on the tax roll and in the tax sale record. The court, in the former opinion, without making an investigation of the pleadings, took it for granted that the answer denied that the property had been sold for taxes, and, as the evidence failed to show a sale, concluded that the judgment of the court, although based on other grounds, could be sustained because of the failure on the part of appellant to show a tax sale. In this we were in error, because, as the answer admitted a sale of the land in question at the time stated in the tax sale certificate and deed, appellant was not required to prove this fact.

"A party who formally and explicitly admits, by his pleading, that which establishes plaintiff's right, will not be suffered to deny its existence or to prove any state of facts inconsistent with that admission." 31 Cyc. 211.

A tax sale upon which the deed in question was based having been admitted in the answer, the failure of the collector to note on the tax roll the fact of the sale or to enter the same in the tax sale record or to issue the tax sale certificate is of no moment. These records and the issuance of the tax sale certificate were only record evidence by which the sale could be proved. In the case of Hiltscher v. Jones, 23 N. M. 674, 170 Pac. 884, this court said:

"The tax sale certificate, which, of course, is thereafter is-
sued, is only written evidence or an acknowledgment that the
sale has taken place. When the property has been struck off,
the rights of the purchaser become fixed."

In that case the court quoted with approval from the
case of Bruno v. Madison, 38 Utah, 485, 113 Pac. 1030,
Ann. Cas. 1913B, 584, and if the reasoning in that case
is applied to the present case, it will be clearly seen that
the failure on the part of the treasurer to make the en-
try and do the acts referred to does not affect the rights
of the appellant, under his tax deed; appellee having ad-
mitted the fact that the sale took place.

On rehearing the court has reconsidered the question
as to whether the owner of lands sold under the law of
1899 (chapter 22, Laws 1899) to the county, the certifi-
cate of sale being held by the county at the time of the
enactment of chapter 84, Laws 1913, has the right to re-
deem from such sale under the later statute, or whether
the right of redemption is governed by the statute in
force at the time of the sale. Under the law of 1899 the
owner was authorized to redeem at any time within three
years from the date of sale. Under the act of 1913, the
owner was permitted to redeem at any time within three
years from the date of recording the certificate of sale.
The certificate in question in this case was not recorded
until 1915, and appellee offered to redeem within three
years from the date of the recording of such certificate.
The act of 1913 specifically repealed chapter 22, Laws
1899, and contained no saving clause.

[**6, 7**] Appellant argued that the latter statute
could have no application to past sales under which the
rights of the parties had become fixed; that tax statutes
are given a prospective operation, and in the former
opinion the majority of the court agreed with the appel-
lant and held that the later enactment had no applica-
tion to the certificate in question. Upon a reconsidera-
tion of the question, however, we have concluded that we
were in error in such construction. The general rule is
that, when an act of the Legislature is repealed without

a saving clause, it is considered, except as to transactions past and closed, as though it had never existed. Sutherland on Stat. Const. § 282. As between private individuals, when a right has arisen on a contract, or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting such right, the repeal of the statute will not affect it, or an action for its enforcement. Sutherland on Stat. Const. § 284. Undoubtedly the repeal of a statute under which a tax sale certificate is acquired by a private individual would not affect the rights of the holder of such certificate. His rights would be governed by the law in force at the time of the purchase, and it would not be competent for the Legislature to enact a statute which would impair such rights; but the Legislature may pass a retroactive law operating on property belonging to the state, and such law will not be unconstitutional so long as private rights are not infringed. 8 Cyc. 902. In 6 A. & E. Ency. of Law, p. 940, it is said:

"The state may constitutionally pass retrospective laws impairing her own rights."

See, also, People v. Frisbie, 26 Cal. 135; State v. Dexter, 10 R. I. 341.

Municipal corporations are mere instrumentalities of the state, for the convenient administration of government, and their powers may be qualified, enlarged, or withdrawn at the pleasure of the Legislature. Property rights which they hold are subject to legislative control, as they are merely agents of the state in the administration of government. Commissioners v. Lucas, 93 U. S. 108, 23 L. Ed. 822.

[8] Where a tax sale certificate is held by a private individual, the purchaser has a vested right to a deed at the time specified in the law under which the purchase was made, and the Legislature cannot subsequently extend the period of redemption, as such extension would be an impairment of the obligation of the contract. 37

Cyc. 1390. But this rule is held not to apply where the
state itself is the purchaser at the tax sale, as the exten-
sion of the time in that case is not a violation of the con-
tract rights, but an act of grace. Adkin v. Pillen, 136
Mich. 682, 100 N. W. 176; State v. Smith, 36 Minn. 456,
32 N. W. 174. This right has been at times exercised by
the Legislature of this state. By the repeal of the act of
1899 by the act of 1913 we thus have this condition as to
tax sale certificates purchased under the law of 1899:
Those purchased by private individuals by reason of
constitutional provisions against the impairment of the
obligations of a contract under the 1899 statute would
not be affected by its repeal. That the later statute un-
doubtedly attempted to do so may be admitted, because,
as stated, the later act contained no saving clause and
completely wiped out all the provisions of the former
act. But, by reason of the constitutional provision, such
later act could have no effect upon the rights of such pri-
vate purchaser. Such repeal, however, was not rendered
ineffectual by any constitutional inhibition as to tax sale
certificates held by the county by purchase under the
former act. Consequently it would and did apply to
such certificates. This being true, we must look to the
later act to ascertain the rights of the landowner to re-
deem from such sale, and we find that he is given three
years from the date of recording the certificate of sale.
If such certificate had been recorded by the county treas-
urer at the time it was, or should have been, issued, as
required by the act of 1899, of course the owner would
have had the right of redemption within three years
from such recordation. While the act of 1913 requires
the recordation of the assignment of such certificate, the
redemption right does not date from the recording of the
assignment, but from the recording of the original tax
certificate. State ex rel. Ols v. Romero, Treasurer, 25 N.
M. 290, 181 Pac. 435. That the purchaser from the state
takes the certificate as it exists at the time of its assign-
ment cannot be questioned.

"Where land is forfeited to the state for nonpayment of
taxes, or bid in by the state at a tax sale, its subsequent con-
veyance to a purchaser from the state will ordinarily invest

him with any and all titles which the state holds to the particular property, although he may take subject to conditions subsequent, such as a requirement of notice to the former owner, the nonobservance of which may divest his title, or subject to the right of the original owner, his grantees, or mortgagees to obtain a reconveyance."    37 Cyc. 1473.

"The appellant took his deed for the land [a tax deed] in the same condition in which the state held it, and subject to the same equities and defenses."    Martin v. Barbour, 140 U. S. 634, 11 Sup. Ct. 944, 35 L. Ed. 546.

To the same effect are Wilcox v. Leach, 123 N. C. 74, 31 S. E. 374; Felch v. Travis (C. C.) 92 Fed. 210; Shelley v. Towle, 16 Neb. 194, 20 N. W. 25.

Appellant has cited many cases in her brief, but all these are to the effect that the state is powerless to affect the rights of private purchasers under tax sale certificates, and have no application to the question here presented.    We hold that the act of 1913 applies to tax sale certificates held by the counties at the time the act became effective, and that such act had the effect to extend the time of redemption to three years from the date of recording the certificate of purchase as to all tax sale certificates held by the various counties at the time such law became effective.    In this case the trial court found that the landowner had offered to redeem within three years from the date of recording the certificate of sale, and further held that the act of 1913 applied.

We agree with the trial court, and for this reason the former opinion will be adhered to; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.

---

[No. 2231, May 8, 1919.]
[Rehearing Denied June 7, 1919.]
STATE ex rel. OLS et al. v. ROMERO, County Treasurer and Collector.

### SYLLABUS BY THE COURT.

1.   Where the county purchased a tax sale certificate at a tax sale on August 17, 1912, for delinquent taxes for the year