Note.—See under (1) 26 Cyc. p. 1360. (2) 38 Cyc. p. 1781; 14 R. C. L. 771; 4 R. C. L. Supp. p. 918; 5 R. C. L. Supp. p. 776. (3) 26 Cyc. p. 1478; anno. 28 L. R. A. (N. S.) 1255; 49 L. R. A. (N. S.) 517; 18 R. C L. p. 676; 3 R. C. L. Supp. p. 841; 5 R. C. L. Supp. p. 997. (4) 26 Cyc. pp. 1203 (Anno), 1225; anno. 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215, 1250; 18 R. C. L. p. 677; 3 R. C. L. Supp. p. 841; 4 R. C. L. Supp. p. 1200.

---

## GASTON v. CARUTH.

No. 11742—Opinion Filed Sept. 30, 1924.

Rehearing Denied Jan. 26, 1926.

**1. Records — Official Records — Entries—When to Be Made.**

It is essential to the official character of official records that the entries in them be made promptly, or at least without such long delay as to impair their credibility, and that they be made by the person whose duty it was to make them, and in the mode required by law.

**2. Evidence — Best Evidence — Bid Off by County in Tax Sale.**

The fact that real estate was bid off by the county for delinquent taxes must necessarily be established by the records and cannot be proved by parol evidence.

**3. Taxation—Tax Sales—Defective Records—Certificate of Purchase—Wrongful Issuance.**

Where records in the county treasurer's office do not affirmatively show that the county bid off and purchased real estate sold for delinquent taxes, a succeeding county treasurer has no authority to issue certificate of purchase to third party,

**4. Same—Sale to County Jurisdictional.**

The fact that the real estate was bid off by the county for delinquent taxes is jurisdictional, and is the basis for subsequent proceedings by third party to obtain tax deed therefor.

**5. Same—Presumption from Recitation in Tax Deed Overcome by Records.**

The statute provides that a tax deed, among other things, is presumptive evidence that the property was sold for taxes as stated in the deed. Record examined, and held, that although the tax deed in this case recites, among other things, that the real estate was bid off by the county and certificate of purchase duly issued to plaintiff, proof that the county was not noted as the purchaser in the records of the county treasurer, clearly overcomes such presumption from the recitation in such tax deed and defeats same.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by Geo. B. Caruth against James A. Gaston to quiet title to lots under a tax deed. Judgment for plaintiff, and defendant appeals. Reversed.

Chas. E. Wells, for plaintiff in error.

Wyatt & Waldrep, for defendant in error.

Opinion by ESTES, C. In September, 1919, defendant in error, Caruth, sued plaintiff in error, Gaston, and others in the superior court of Pottawatomie county claiming title and to quiet title under a tax deed to lots 4 and 5 in block 8 in North Park addition to the city of Shawnee. Parties will be referred to as they thus appeared in the trial court. Defendant, Gaston, on several grounds attacked the validity of such deed, tendered the amount of taxes, penalty and costs, praying that said tax deed be canceled and title quieted in defendant. From judgment for plaintiff sustaining such tax deed, this appeal is prosecuted.

On June 18, 1919, the plaintiff, Caruth, paid the county treasurer the 1915 and the intervening unpaid taxes, penalty and costs, Thereupon, Mr. Alexander, then county treasurer, issued and delivered to plaintiff

a certificate of purchase for each of said lots, reciting that on the 6th day of November, 1916, said real estate was offered for sale for the unpaid 1915 taxes, stating the amount thereof; and further reciting that said lots were bid off for the amount of said 1915 taxes by the county on November 6, 1916. Mr. Hunter was then county treasurer. A deputy under Mr. Alexander on November 6, 1919, as shown by said certificates, signed the name of Mr. Hunter, the former treasurer, to the certificates. Thus it was sought to supply a certificate of purchase of said lots to the county nunc pro tunc. Mr. Alexander, by said certificates, also assigned to the plaintiff, Caruth, all of the interests of the county in said lots, duly acknowledging the same. Thereupon the plaintiff took steps to procure, and on August 20, 1919, demanded and received the tax deed on which this suit was based.

Defendant attacked said tax deed for that there was no sale of said lots to Pottawatomie county on November 6, 1916. On the trial, defendant called Mr. Alexander, the treasurer in 1919, when said certificates and tax deed were issued. Said witness produced the delinquent tax record in his office for the year 1916. It is understood that said record consists of a printed form conveniently arranged for filling in the data of each sale in blank columns under appropriate printed heads. With respect to the sale of the lots in controversy to the county in 1916, said record showed two certificates Nos. 2910 and 2911, and the proper legal numbers of said two lots. In the column headed "Name of Purchaser," no name whatever was entered. The foregoing is, as nearly as we can determine from the evidence, the condition of said delinquent tax sales record as made by Mr. Hunter, the treasurer in 1916, at or about the time said lots are supposed to have been bid off by the county. The evidence shows that the data in other columns of said record was supplied in 1919 by Mr. Alexander, or his deputy, showing the assignment of said certificates to Caruth, the amounts he paid, the issuance of such tax deed to Caruth and the like. The return of the sale made to the county clerk by Mr. Hunter shows the same data.

1—3. Section 9736, Compiled Oklahoma Statutes 1921, provides that the county treasurer shall keep a tax sale record. upon which he shall enter, among other things, to whom the real estate was sold. Section 9740 provides that the county treasurer, in case there are no other bidders offering the amount due, shall bid off any real estate offered, for the amount of taxes, etc., due and unpaid, in the name of the county, the coun-

ty acquiring all the rights, both legal and equitable, that any other purchaser could acquire by reason of such purchase. Section 9743 is:

"Record of Purchase by County—Resale. Whenever the county treasurer of any county shall bid off any real estate in the name of his county, he shall make a note of such bid and purchase upon his sales record, and if any real estate so purchased by the county shall remain unredeemed for a period of two years from date of sale, and no person shall offer to purchase the same for the taxes, penalty and costs due thereon, the county treasurer shall proceed to advertise and sell such real estate at public auction, as herein provided."

Section 9735 is:

"Return of Sale. On or before the last day of November, following the sale of real property, the treasurer shall file in the office of the county clerk of his county a return of his sale of land, retaining a copy in his office, showing the land sold, the name of the purchasers, and the sum paid by them, and also a copy of the notice of sale, with the certificate of advertisement verified by affidavits, and such certificate shall be evidence of the regularity of the proceedings."

The statutes, prior to statehood, seem to have required that in case the county bid off the real estate and thus became the purchaser, that a certificate of purchase issued to the county should be assigned, in order to convey title to a third party. Weeks v. Merkle, 6 Okla. 714, 52 Pac. 929; Wilson v. Wood et al., 10 Okla. 279, 61 Pac. 1045. Present statutes, however, require the county treasurer to keep a tax sale record and to enter therein, among other things, the names of the purchasers at such sales, and in his return of sales to the county clerk, to show the names of the purchasers. If this be done, such county treasurer, or his successor, must issue a valid certificate of purchase to a third person, assigning the interest of the county in the real estate thus purchased by the county, on receiving the payments provided by the statute These records constitute for the county its muniment of title.

Such records thus required to be made and kept, we take it, are also intended to provide an official record of the sale, and to give information to the public and to the party whose property has been sold, of such fact. These are the records of the fact of sale known to the treasurer and done by him, or under his direction. They are designed to afford evidence of such official act, and in order to be competent evidence to establish the fact recorded therein, it is essential that the entries be made by the per-

son whose duty it was to do so. The entries in such records must be made promptly, or at least without such long delay as to impair their credibility, and by the person whose duty it was to make them, and in the mode required by law. 1 Greenleaf on Evidence (16th Ed.) sec. 485; 3 Jones on Evidence, sec. 509; Pace v. Wight (N. Mex.) 181 Pac. 430.

Now if the lots in controversy were sold to the county on November 6, 1916, it was the mandatory duty of Mr. Hunter, then county treasurer, to show the name of the purchaser in his record of sales and in such return. These records do not show that any one purchased said lots. Mr. Alexander, the treasurer in 1919, did not and could not supply this data in said records. Plaintiff sought to show by Mr. Alexander that it was the custom of the treasurer's office in 1916 not to note the name of the purchaser in case the real estate was bid off by the county. However, his testimony fails even to show such custom. The fact that real estate was sold for delinquent taxes to the county, must necessarily be established by the records and cannot be proved by parol evidence of a custom or otherwise. Any other rule would lead to manifest injustice and afford opportunities for fraud. Pace v. Wight, supra; Black on Tax Titles (2nd Ed.) sec. 446, and cases cited.

4. The fact that the real estate in controversy was in fact sold for delinquent taxes in 1916, is jurisdictional. If no sale at said time to Pottawatomie county in fact occurred, the basis for the subsequent proceedings would not exist. Id.

5. The tax deed on which plaintiff relies recites that a sale of said lots was made in 1916 for the taxes for 1915; that the county bid off said lots and, that, by the certificate of purchase, Mr. Alexander, county treasurer in 1919, assigned the rights of the county to the plaintiff. The statutes of this state provide that a tax deed is presumptive evidence of six matters, among which is that the property was sold for taxes as stated in the deed. It is further provided that in order to defeat the deed, it must be clearly pleaded and proven that some one of the requisites, of which such deed is presumptive evidence, was wholly omitted and not done, and a showing that any one or them was irregularly done will not be sufficient to defeat the deed. In this connection, plaintiff contends that the defendant did not sustain the burden of proof. When said deed was introduced by plaintiff, a prima facie case that the lots were sold for taxes in November, 1916, to the county was made. However, when defendant, by Mr. Alexander,

showed by said records that no sale of said lots was made to Pottawatomie county in said year, the presumptive evidence of such fact contained in said deed was overcome. Thereby defendant defeated said deed by showing that one necessary requisite was not done.

Defendant in this appeal attacks said deed also on the notice given to procure same and otherwise. It is unnecessary to consider these. The judgment of the trial court being thus erroneous, should be reversed.

It is contended that Pentecost et al. v. Stiles, 5 Okla. 500, 49 Pac. 921, is decisive for defendant. In that case, the court had under consideration a certificate of sale and held:

"The certificate of sale of lands or taxes required by law to be executed by the county treasurer on making the sale, is for the benefit and protection of the purchaser, whether he be an individual or the county, and the failure of the treasurer to make and execute this certificate in no way affects the validity of the sale, which may be proven by other evidence, if the certificate is not issued.".

As indicated herein, it was required prior to statehood, and at the time of said decision, that the treasurer shall issue to the county a certificate for land bid off by the county at tax sale. This is not the law now. Nothing in this opinion is intended to modify or overrule said Pentecost Case. The question there decided is not involved here. The deputy of Alexander, the treasurer in 1919, on payment of the delinquent taxes by Caruth in June, 1919, issued a certificate for each of the two lots to Caruth, and signed thereto the name of Hunter, the treasurer in 1916, which certificates were acknowledged by Alexander. As pointed out herein, the statutes made it the mandatory duty of Hunter in 1916, when it is claimed the lots were sold to the county, to show by the records in his office to whom the lots were sold. He did not make a record showing these lots had been sold to the county or to any one. We hold that, under such statutes, the only way Caruth could prove that these lots were sold to the county was by the sales records. He could not prove this by other evidence, as the Pentecost Case holds may be done, so far as a certificate holder is concerned. There is a vast difference between statutes requiring the county treasurer to keep a record showing to whom lots were sold, and the statute which provides simply that a purchaser is entitled to a certificate for his own benefit, as shown in the Pentecost Case. The lat-

ter case is not applicable because the county in 1916 was not entitled to a certificate of purchase, but was entitled to have the record show to whom the lots were sold, and was not only entitled, but said record was absolutely necessary, under the statutes, in order to vest the county with the rights of such purchaser. The Pentecost Case is not authority that Caruth could prove in 1919, by the parol evidence of a custom, that the county treasurer, in 1916, purchased said lots. Public policy and prevention of fraud readily suggest such distinction.

Let the cause be remanded with directions to the trial court to vacate the judgment herein, and render judgment for defendant, Gaston, canceling the said tax deed, according to the course of equity.

By the Court: It is so ordered.