22 P.(2d) 850

McNUTT v. LOVELACE. *

No. 3737.

Supreme Court of New Mexico.

April 17, 1933.

Rehearing Denied June 12, 1933.

---

*Motion for leave to file second motion for rehearing denied June 21, 1933.

H. B. Hamilton, of El Paso, Tex., for appellant.

J. W. Chapman, of Santa Fé, for appellee.

WATSON, Chief Justice.

This is a suit to quiet title; the complaint being in statutory form. There was an answer and cross-complaint, upon the allegations of which the plaintiff obtained judgment on the pleadings. Defendant has appealed.

According to the allegations of the cross-complaint, appellee's title, quieted by the judgment, is thus derived: Taxes were assessed upon the property for the year 1915. At the 1916 tax sale, the land was struck off to the county, to which was issued a tax sale certificate dated September 11, 1916. This certificate was assigned to appellee March 27, 1930, and on the same day he obtained his tax deed.

Appellant's first contention is that the land was not subject to taxation in 1915. To sustain this point, he pleaded that "on the 27th day of August, A. D. 1914, the * * * United States * * * made and executed, to the Santa Fé Railroad Company its patent * * *" for the lands, and that such patent was not recorded in the county records until September 15, 1915.

We are unable to see how these facts establish appellant's position. It may be, as he contends, that the date of execution of the patent does not conclusively fix the time of passage of legal title from the gov-

ernment. It seems certain, however, that the date of recording in the county records is immaterial. Appellant, having assumed the burden of establishing that the land was not subject to taxation, has failed to plead facts sufficient for the purpose.

There is some argument as to the meaning of Laws 1913, c. 84, § 6, in force when this assessment was made. It provided that: " * * * Lands entered or purchased under any Act of Congress shall not be subject to taxation until patent therefor has been issued, except in cases where the issuance of patent has been delayed by the neglect or default of the entryman or purchaser, or of his assigns."

■ Whatever the word "issued" may mean, we are satisfied that it does not include a recording of the patent in the county records. If there was delay in the delivery of the patent "made and executed" in August, 1914, such that the legal title did not pass until some time in 1915, appellant has failed to plead the fact.

■ Appellant further contends that appellee's tax deed is void. His proposition is that the certificate, then held by the county, was affected by the Tax Act of 1929, chapter 114, with the result, either that limitation had run against it under section 15 (Comp. St. 1929 § 141-715), or that the new procedure prescribed by that act for foreclosure of tax liens was necessarily to be followed.

We do not consider section 15 as having been intended to raise the bar of limitation as against then outstanding tax sale certifi-

cates. What this section bars is proceedings "for the collection of taxes, or for the foreclosure of tax liens." Presumably such proceedings had already been had, according to the laws then in force, and had resulted in the tax sale certificate to the county.

Nor do we agree that the county, owning a tax sale certificate issued in 1916, must proceed to have it converted into a new certificate of lien, and then institute suit to foreclose it under the new procedure. After considering the whole act, and particularly the saving clause, section 22 (Comp. St. 1929, § 141-722), we are compelled to conclude otherwise. From the time of the tax sale in question until chapter 114 took effect as law, there was always in force some statute under which the county could sell the certificate and convey the land to its assignee. If such statute was repealed by chapter 114, it nevertheless remained in force "as to tax sale certificates * * * issued prior to the effective date of * * *" that act.

Finding no merit in appellant's contentions of error, the judgment will be affirmed, and the cause remanded.

It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.

On Motion for Rehearing.

WATSON, Chief Justice.

■ Moving for rehearing, appellant challenges the judgment on the new ground that the tax deed is void because the owner's

right of redemption had not been extinguished when the conveyance was made. Citing Crawford v. Dillard, 26 N. M. 291, 191 P. 513, he contends that the judgment is thus so "inherently defective and erroneous" that this belated attack should be permitted. That the point is properly before us is expressly conceded by appellee.

Counsel agree that the right of redemption in this case is governed by Laws 1913, c. 84, as amended by Laws 1915, c. 78. The controlling provisions are found in sections 36, 38 (Code 1915, §§ 5500, 5502), the latter section having been amended.

Appellee relies strongly on the fact, not stated in our first opinion but pleaded in appellant's cross-complaint, that on August 4, 1919, the county had caused its certificate of sale to be recorded. A first reading of the sections cited will disclose the difficulty of maintaining the view that this fact is controlling.

The only direct and explicit provision for redemption of certificates in private ownership is in section 38 (Laws 1915, c. 78). It permits redemption "within three years from the date of such certificate, provided for in section 36 hereof." According to this the recording is immaterial. The period of redemption starts with the date of a certificate.

Appellee contends that this provision does not apply in his case, since he is not a purchaser at a tax sale, but an assignee of the county to which the property had been struck off. He contends that section 36 alone governs redemption in his case.

Appellant contends that the provision does control, but that it must be construed as if reading "from the date of the assignment of the duplicate certificate provided for in section 36."

Each view requires consideration of the statute in its original and in its amended form, and of certain decisions to be hereinafter mentioned.

Section 36 seems to deal exclusively with the situation wherein, for want of bidders at the tax sale, the property shall be struck off to the county. It seems to contemplate that a certificate of sale shall be issued to the county; that, if possible, the county's interest shall be subsequently sold; and that the transfer shall be effected by assigning to the purchaser a duplicate of the certificate. In this class of cases redemption is expressly allowed at any time prior to the sale of the duplicate. On the sale of the duplicate the collector must notify the property owner of the sale, and that a deed will be issued unless he shall redeem the property "within three years from the date of recording of said duplicate certificate, which, with the assignment thereof by the collector, must be recorded in the office of the county clerk." This by plain inference fixes the period of redemption.

Original section 38, on the other hand, deals mainly with the situation wherein the property is struck off at the tax sale directly to a private purchaser. He receives a single or original certificate. However, as to redemption it appears to cover both situations.

The original provision was "within three years from the date of recording such certificate, or duplicate certificate, provided for in section 36 hereof." It would seem from this expression that "such certificate" must have meant the certificate immediately before referred to, the certificate to be issued to a private purchaser at the general·tax sale, and that "duplicate certificate, provided for in section 36," meant the assigned duplicate delivered to the county's transferee. In either case, recording was to start the period of redemption. There appears no disharmony in the statute as originally passed.

Laws 1915, c. 78, rewrote section 38, leaving section 36 untouched. It made no change in section 38 until it came to the provision above quoted. To facilitate comparison we here repeat the original provision as to redemption, inserting parentheses to indicate words omitted in the amendment: "Such former owner may at any time, within three years from the date of (recording) such certificate (or duplicate certificate), provided for in section 36 hereof, redeem the property. * * * "

It should perhaps be noted first that this particular provision was not originally of great importance. Though it directly confers the right of redemption, each of the sections contained and still contains another provision conferring it by necessary implication: Section 36, by requiring notice of sale of the duplicate of the county's certificate, containing advice to the owner that a deed will follow unless he shall redeem the property within three years from the date of recording the duplicate certificate with the assignment; section 38, by requiring that there be inserted in the certificate a statement that "the sale is subject to the right of the owner to redeem the property within three years."

It is apparent that the 1913 Legislature overlooked this fact. It looked to this particular provision as the only one necessary to be altered in order to change the redemption system. It left untouched the other provisions just referred to and thus created a difficult situation.

What is "such certificate, provided for in section 36 hereof"? Without extrinsic aid, it would plainly refer either to the original certificate issued to the county, or to its duplicate sold by the county, and would not refer to the certificate of section 38. This view leads to incompatibility with section 36, as we have hereinbefore interpreted it. While the property owner's right to redeem was to extend from the date of "such certificate," he was still to be notified by the collector of a right extending from the recording of the duplicate certificate with the assignment. Such a situation is impossible. "Such certificate" must mean something else, or we must imply a repeal or amendment of the notice requirement, or we must declare the amendatory provision void or inoperative.

Both counsel urge that it means something else: Appellee, that it does not refer to any certificate mentioned in section 36, but solely to the certificate of section 38; appellant, that it refers to the duplicate certificate of section 36 or its assignment.

Appellee contends that if the certificate or duplicate certificate of section 36 was meant, there remains no provision for redemption from the certificate of section 38. This is not quite true. The collector is still required to "state" in that certificate, among other things, the date of the sale, and that "the sale is subject to the right of the owner to redeem the property within three years." This might lead to controversy as to whether the redemption right should extend from the date of the sale or from the date of the certificate. That would not be very important. The two dates would not ordinarily differ greatly. Giving the property owner the benefit of the doubt, the date of the certificate could easily be selected as governing.

Again, the saving clause of amended section 38 argues against appellee's contention. It preserves, until January 1, 1916, the right of redemption as to all property struck off to the county between March 16, 1905, and March 18, 1913; the duplicate certificate not having been assigned. This expressly, clearly, and solely refers to the certificates of section 36. From what was the redemption right saved, if not from some curtailment by the amendment?

Moreover, the final provision of chapter 78, Laws 1915, applies exclusively to the certificates of section 36. It provides a new system by which the county may transfer the duplicate certificate for less than the amount of the taxes, interest, penalty, and costs. It preserves the right of redemption up to the date set for the public auction. This does not argue strongly either way, since some provision of the kind was no doubt necessary to authorize a redemption at the minimum price fixed.

We are not strongly persuaded, therefore, that the words "provided for in section 36 hereof" were inadvertently left in amended section 38, should be rejected in construction, and that "such certificate" should be held to be merely the single certificate issued to a private purchaser at the general tax sale.

We come now to appellant's contention that "such certificate" is the duplicate certificate or the assignment of it. Of course, an original and a duplicate certificate must bear the same date, so the real contention is that the effect of the amendment was to change the opening of the period of redemption from the date of recording the duplicate certificate to the date of the assignment of it.

This requires taking considerable liberties with the language, and still does not harmonize the statute. It leaves the property owner to receive a false notice. It leaves unanswered the inquiry as to the meaning of the saving clause.

Unable to embrace appellant's view, we are forced to confess inability to harmonize the statute by an interpretation of section 38. We are thus driven either to reject the provision in question as incomprehensible, or to interpret section 36 in harmony with it.

It we were to adhere to the interpretation of section 36 hereinbefore expressed, and in which present counsel to a large extent concur, we might choose the former alternative;

rejection of the amended provision as incomprehensible. Much force must be conceded to the contention that a recording of the county's original certificate is ineffectual; that the 1913 act did not contemplate it; that it required an assignment of a duplicate of that certificate and a recording of the duplicate and the assignment to start the period of redemption; and that the amendment is ineffectual because of legislative failure to repeal or modify the notice requirement of section 36.

But the statute has received a different interpretation, which solves the question; not so much by meeting, as by ignoring, these difficulties. State ex rel. Ols v. Romero, 25 N. M. 290, 181 P. 435, 437, involved property struck off to the county in 1912 under the 1899 (Duncan) act (chapter 22). Following Pace v. Wight, 25 N. M. 276, 181 P. 430, 437, it was held that the 1913 act was applicable to this certificate outstanding in the county when the act took effect. The county caused its certificate to be recorded June 8, 1913. It subsequently assigned the duplicate certificate, and a record of this was made November 17, 1915. Redemption was attempted November 15, 1916, and refused. The case was mandamus to compel the county treasurer to accept redemption. It was claimed that there was no efficacy to the record made June 18, 1913, since the Duncan Act, which required it, had been repealed, and that according to the 1913 act, the only recording which could start the running of the redemption was that of the duplicate certificate and assignment of November 17, 1915. This court ignored all distinction between the certificate and the duplicate certificate, saying: "The certificate of sale in this case was recorded twice." Passing squarely on the law point, it was said: "We do not so construe the law. The statute allowed three years from the recording of the certificate, and the certificate of sale to the county was recorded on June 13, 1913, giving the owner three years, or until June 14, 1916, in which to redeem, and a tender made, as in this case, on November 16, 1916, was made too late. The fact that the assignment and certificate of sale from the county to Ulury was recorded later does not extend the time of redemption to three years from that date. As we construe the statute, the owner was entitled to three years from the recording of the certificate, and such recording meant the first recording, and not a subsequent one. The object of the recording was to give constructive notice, and the law was complied with when this notice was given."

This same theory was applied in Lewis v. Tipton, 29 N. M. 269, 222 P. 661, without discussion or citation. State ex rel. Ols v. Romero, supra, was cited in Pace v. Wight, supra, to this effect: "While the act of 1913 requires the recordation of the assignment of such certificate, the redemption right does not date from the recording of the assignment, but from the recording of the original tax certificate."

It is too late now to criticize this decision. Too many property rights have been settled in conformity with it. It serves no useful purpose now to inquire what happened to the

notice requirement of section 36: Whether it was to be given in a modified form when the county recorded its original certificate; whether to be given again in a modified form, or at all, when it subsequently assigned the duplicate. It is too late to urge the legislative policy that the period of redemption should not start so long as the county alone was adversely interested. It has been plainly and definitely decided that the county might, by recording its own certificate, start the period of redemption.

If, despite the notice requirement, the period of redemption could be thus started, there is no difficulty in the change to the date of the certificate. The latter, as commencement of the period of redemption, is no more incompatible with the other provisions of section 36 than the former. Every objection here raised by appellant, under the amendment, to acceptance of the date of the original certificate as controlling, existed equally, before the amendment, to accepting the date of recording the county's certificate as controlling. Those objections must now yield. Following State ex rel. Ols v. Romero, and applying the amendment, we must hold that the redemption period terminated, not three years after the recording of the county's certificate, but, conformably to an alternative proposition of appellee, immediately upon the assignment of the duplicate. It started to run with the date of the certificate, September 11, 1916. Recordation August 4, 1919, does not affect the case. The property could have been redeemed at any time prior to the assignment, March 27, 1930, but not thereafter.

Appellant contends that State ex rel. Cunningham v. Romero, 22 N. M. 325, 161 P. 1103, 1106, Crawford v. Dillard, 26 N. M. 291, 191 P. 513, and Hudson v. Phillips, 29 N. M. 101, 218 P. 787, 788, support his views; that the last-mentioned case definitely settles the matter; and that if State ex rel. Ols v. Romero be taken as seriously as we take it, the Hudson-Phillips decision overrules it.

The Cunningham-Romero Case did not involve the time for redemption. The right still subsisted under any theory. The only question was whether the tender was sufficient in amount. Appellant relies on the passage, "It is our conclusion that the terms 'purchaser and amount paid therefor' refer to the sale of the certificate by the county." In the connection in which this statement was made, we do not perceive that it has any bearing on the present question.

Nor do we think appellant aided by Crawford v. Dillard, supra. All that was really decided there, with respect to the 1915 act, was that it was inapplicable to certificates outstanding when it took effect. While we indulged in some comment on the "change made," the case did not require, nor did we undertake, any careful interpretation of the statutes here involved. Since the county's certificate did not issue until 1918, nothing would there avail to cut off redemption except to apply the act of 1899 or that of 1917, under both of which the period commenced with the date of sale.

Hudson v. Phillips, supra, does not expressly overrule the Ols-Romero decision, nor men-

tion it. ·We do not find it taking a contrary view. Appellant relies on this passage: "In Crawford v. Dillard, 26 N. M. 291, 191 P. 513, we had occasion to examine acts 1913, c. 84, acts 1915, c. 78, and acts 1917, c. 80, covering this subject, and we there held that by the law of 1913, an owner had three years within which to redeem after the recording of the tax sale certificate. We further held that under the laws of 1913, 1915, and 1917, construed together, when a tax certificate is sold, a duplicate certificate should be issued to the purchaser thereof, and the owner of the land might redeem within three years from the date of such certificate."

In this passage there is the same curious failure to distinguish between the certificate and the duplicate certificate. In the expression "the owner of the land might redeem within three years from the date of such certificate," it is impossible to say which certificate was meant, the original or the duplicate. But that was not important, since, viewing the evidence, we concluded that the purported date of the county's certificate, August 16, 1916, was false, and that its real date of issuance was the date of the assignment. Such being the fact, the period of redemption, whether starting with the date of the certificate, the date of the assignment, or the date of recording, was but a few days spent when the deed was issued.

In apology for this extended discussion, we may say that the contentions of counsel have been made with great earnestness and conviction; the matter has not been free from

difficulty; and we have felt constrained to set forth the processes by which we reach our none too satisfactory conclusion.

The motion for rehearing will be denied.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.