2004-NMCA-112

98 P.3d 722

The CHASE MANHATTAN BANK, as Trustee of IMC Home Equity Loan Trust 1998–4 under the Pooling and Servicing Agreement Dated as of June 1, 1998, Plaintiff–Appellee,

v.

John A. CANDELARIA, Jane C. Candelaria, Morequity, Inc., a Delaware Corporation, John Doe, a Tenant whose Name is Unknown, Jane Doe, a Tenant whose Name is Unknown, Defendants–Appellants,

v.

Charles L. Reule, Third–Party Plaintiff–Appellee,

v.

Carlo A. Roybal, Third–Party Defendant–Intervenor–Appellant.

No. 22,625.

Court of Appeals of New Mexico.

March 10, 2003.

Certiorari Granted, No. 28,002, April 28, 2003.

Will Jeffrey, Aldridge, Grammar, Jeffrey & Hammar, P.A., Albuquerque, NM, for Appellee Reule.

Anthony James Ayala, Albuquerque, NM, for Appellant Roybal.

OPINION

WECHSLER, Chief Judge.

{1} Appellant Carlo A. Roybal (Redeemer) appeals the district court's award of $10,638.35 to Charles L. Reule (Purchaser) to reimburse Purchaser for improvements made to property that was acquired at a foreclosure sale. We hold that the "betterment statute," NMSA 1978, §§ 42-4-17 to 42-4-18 (1953), permits such an award and affirm.

*Background*

{2} The Chase Manhattan Bank filed a complaint for foreclosure against John and Jane Candelaria, the owners of property located in Albuquerque, New Mexico. The Candelarias did not file an answer, and a default judgment and decree of foreclosure was entered against them.

{3} On March 7, 2001, Purchaser successfully acquired the property with a $71,000 bid at the foreclosure sale. Purchaser knew at the time of his bid that his purchase was subject to redemption by the Candelarias or their assigns. The district court approved the sale on March 21, 2001. Purchaser took immediate possession of the unoccupied property and began making improvements.

{4} The Candelarias assigned their rights of redemption in connection with the property to Redeemer. On April 6, 2001, Redeemer filed a petition for certificate of redemption and deposited $71,000 plus interest with the court. Purchaser was served with the petition on April 9, 2001.

{5} Purchaser filed his response to the petition for certificate of redemption and claimed he was entitled to reimbursement of $10,917.45 for the labor and materials he had invested in the property. Redeemer replied and argued that he had complied with the statutory requirements for redemption set forth in NMSA 1978, § 39-5-18 (1987), and that no additional funds could be required.

{6} Purchaser's claim for reimbursement was tried to the court on September 5, 2001. The parties stipulated to Purchaser's exhibits and the appraisal of Purchaser's expert. Additionally, they stipulated that the property

was worth $71,000 at the time of the foreclosure sale and that Purchaser had spent $10,638.35 on labor and materials. Redeemer introduced no testimony or exhibits.

{7} The court awarded Purchaser $10,638.35 as reimbursement for labor and materials invested on the property and interest of $641.85. Redeemer appealed.

*Application of Section 39–5–18 and Section 42–4–17*

{8} Redeemer claims that Section 39–5–18 is exclusive on the amount that must be paid for statutory redemption and, therefore, the award reimbursing Purchaser for improvements made is not authorized by statute and is contrary to law and legislative intent. "[I]nterpretation of a statute is a question of law which an appellate court reviews de novo." *State ex rel. Shell W. E & P, Inc. v. Chavez*, 2002–NMCA–005, ¶ 7, 131 N.M. 445, 38 P.3d 886; *see W. Bank v. Malooly*, 119 N.M. 743, 748, 895 P.2d 265, 270 (Ct.App. 1995) (stating that the issue of whether a junior lienholder's right of redemption would merge with the property interest that lienholder acquired at a judicial sale is a question of law to be reviewed under a de novo standard).

{9} Section 39–5–18 provides in part:

A. After sale of any real estate pursuant to any such judgment or decree of any court, the real estate may be redeemed by the former ... owner of the real estate ... or [his] assigns ...:

(1) by paying to the purchaser ... the amount paid, with interest from the date of purchase at the rate of ten percent a year, together with all taxes, interest and penalties thereon ...; or

(2) by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered....

. . . .

D. The hearing shall be governed by the rules of civil procedure. At the hearing, the judge shall determine the amount of money necessary for the redemption, which shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances.

{10} Purchaser does not dispute that Redeemer had the right to redeem the property by complying with the procedures set out in Section 39–5–18. The parties disagree as to whether Redeemer may also be required to reimburse Purchaser for improvements made before redemption.

{11} Purchaser argues that he was entitled to reimbursement under the betterment statute. Section 42–4–17 provides in part:

When any person or his assignors may have heretofore made, or may hereafter make any valuable improvements on any lands, and he or his assignors have been or may hereafter be deprived of the possession of said improvements in any manner whatever, he shall have the right, either in an action of ejectment which may have been brought against him for the possession, or by an appropriate action at any time thereafter within ten years, to have the value of his said improvements assessed in his favor, as of the date he was so deprived of the possession thereof, and the said value so assessed shall be a lien upon the said land and improvements, and all other lands of the person who so deprived him of the possession thereof situate in the same county, until paid[.]

{12} Sections 39–5–18 and 42–4–17 can be construed together in the circumstances of this case. *See Rauscher v. Taxation & Revenue Dep't*, 2002–NMSC–013, ¶ 24, 132 N.M. 226, 46 P.3d 687 (reading statutes together because both were relevant under the facts of the case). Section 39–5–18 authorized the redemption ordered by the court. Purchaser made his claim for labor and materials for the improvements in his response to the petition for certificate of redemption. Under Section 42–4–17, Purchaser had the right to bring a claim for improvements in an "appropriate action" within ten years of loss of possession of the

improvements. Assuming that Section 42–4–17 gives Purchaser the right to bring an action against Redeemer for the improvements, it would be contrary to the principles of judicial economy to require Purchaser to initiate an independent action to resolve his Section 42–4–17 claim.

{13} Purchaser met the requirements of Section 42–4–17 to bring his claim. Purchaser had possession of the property and color of title as a result of the district court's order confirming the sale of the property and ordering delivery of the property and the deed to Purchaser. *See Cano v. Lovato*, 105 N.M. 522, 536, 734 P.2d 762, 776 (Ct.App.1986) (requiring color of title for application of Section 42–4–17). Redeemer does not dispute that Purchaser made the improvements to the property and was thereafter deprived of possession. Therefore, Purchaser is entitled to reimbursement for the improvements unless, as Redeemer argues, the application of Section 42–4–17 contravenes the public policy embodied in the redemption statutes.

■ {14} The betterment statute creates an obligation to pay for improvements based on principles of equity and unjust enrichment. *See Cano*, 105 N.M. at 537, 734 P.2d at 777; *Madrid v. Spears*, 250 F.2d 51, 54 (10th Cir.1957) (stating that betterment statutes "have their genesis in and are based upon [both] the maxim that one who seeks equity must do equity" and principles of unjust enrichment). Our Supreme Court has noted the breadth of these principles. *See Plaza Nat'l Bank v. Valdez*, 106 N.M. 464, 467, 745 P.2d 372, 375 (1987) (stating that a court sitting in equity "may avail itself of those broad and flexible powers which are capable of being expanded to deal with novel cases and .... [e]quity has the inherent power to supply a method in any suit to protect the rights of all interested parties") (citation omitted). The redemption statutes do not preclude recovery for unjust enrichment. *See id.* (recognizing the application of equity to the right of redemption in affirming a district court's extension of the statutory time period for redemption).

{15} We are therefore not concerned that the application of the betterment statute to allow reimbursement for improvements to property subject to redemption contravenes the public policy embodied in the redemption statutes. A court need not grant reimbursement if doing so would, under equitable principles, fail to carry out the purposes of the redemption statutes. *See Madrid*, 250 F.2d at 54 (stating that the betterment statutes are designed to allow a court to balance the equities and do complete justice).

{16} Significantly, Redeemer made no such showing in this case. The district court had issued the certificate of redemption prior to trial. Both parties agreed that the value of the property increased by $24,000 from March 7, 2001, when Purchaser paid $71,000, to July 31, 2001, when the property was appraised at $95,000. The parties also agreed that Purchaser incurred $10,638.35 of improvement costs. Redeemer did not introduce any evidence contradicting either the appraisal or the expenses, and the court awarded the lesser of the increase in market value and the amount actually spent. *See Cano*, 105 N.M. at 537, 734 P.2d at 777 (holding that original purchaser who improved property would be entitled to recover the lesser of the value of his labor and materials or the amount his improvements added to the market value of the land). Nor is there any timing issue as discussed by the dissent in the case because Purchaser did not bring a claim after the redemption period. The district court's award to Purchaser of $10,638.35 to reimburse Purchaser for improvements was consistent with the equitable policy of avoiding unjust enrichment and did not threaten or violate Redeemer's statutorily conferred right of redemption.

*Redeemer's Other Arguments*

■ {17} Redeemer contends that Purchaser continued to make improvements "after being served with [Redeemer's] Petition for Certificate of Redemption." However, there was no evidence introduced at trial that Purchaser knew of Redeemer's intent to redeem the property until April 6, 2001, when Redeemer filed his petition for certificate of redemption. Because Redeemer did not raise this issue at trial or submit evidence on it, he has waived this issue. *See Campos Enters., Inc. v. Edwin K. Williams & Co.*,

1998–NMCA–131, ¶ 12, 125 N.M. 691, 964 P.2d 855 ("As a court of review, we cannot review [a party's] allegations which were not before the district court.").

{18} In his earlier motion for summary judgment, Redeemer attached an affidavit in which he claimed that he telephoned Purchaser in late March and notified Purchaser of his intention to redeem. However, Purchaser disputed Redeemer's assertions in his response and in his deposition, and we leave it to the trier of fact to resolve any conflict in testimony. *See Buckingham v. Ryan*, 1998–NMCA–012, ¶ 10, 124 N.M. 498, 953 P.2d 33 ("[W]hen there is a conflict in the testimony, we defer to the trier of fact.").

{19} Finally, additional issues raised in various proceedings below, but not raised or argued in Redeemer's brief, are considered abandoned. *Fleming v. Town of Silver City*, 1999–NMCA–149, ¶ 3, 128 N.M. 295, 992 P.2d 308 ("All issues raised in the docketing statement, but not argued in the brief in chief are deemed abandoned.").

*Conclusion*

{20} We affirm the district court because Section 39–5–18, while providing the exclusive procedure and remedy for redemption, does not bar a court from ordering a redeemer to reimburse a purchaser at foreclosure for improvements made by that purchaser before a petition for a certificate of redemption is filed or served. The district court had the authority to order such reimbursement under Section 42–4–17.

{21} **IT IS SO ORDERED.**

I CONCUR: MICHAEL D. BUSTAMANTE, Judge.

IRA ROBINSON, Judge (Dissenting).

ROBINSON, Judge (Dissenting).

{22} There are several reasons why I cannot agree with the majority. First and foremost is the concept of equity as it is applied in this appeal. I have reached the conclusion that relying on the concept of equity misses the mark, resulting in inequity.

{23} The majority relies upon the betterment statute, Section 42–4–17, to get around the obvious and clear language of the redemption statute, Section 39–5–18. The redemption statute sets out those specific expenditures that must be reimbursed by a property owner or his assignee who redeems property that has been sold at a foreclosure sale. I believe that the betterment statute as applied in these circumstances is contrary to sound public policy.

**Public Policy**

{24} The redemption statute recognizes that a family may have lived in a home for five, ten, or more years and have been paying faithfully on the mortgage. But, for reasons of bad health, a job lost, a recession or other social calamity, the family falls upon hard times and cannot keep up the mortgage payments. The bank or other lending institution then forecloses upon their interest in the home, and it is sold at a foreclosure sale.

{25} We see little justice in a family losing a home for which it has been paying all these years. The legislature has sought to make it as reasonable (we cannot say "easy") as possible for the family to get their home back through the redemption process.

**The Redemption Statute, Section 39–5–18**

{26} This statute deals with the rights and obligations of a person (or his assigns) who is trying to redeem real property lost at a foreclosure sale. Subsection A limits the time within which a redeemer may seek return of the foreclosed property to nine months from the date of the foreclosure sale, and Subsection D limits the amount of money that the redeemer has to pay to get his property back. The kinds of payments that are required under the redemption statute go directly to the taxes owed and payments such as mortgage payments that are designed to avoid any additional defaults or foreclosures. These are payments that protect the property. These are the essentials, not the extras.

{27} Here, the district court determines that the amount of money necessary for redemption, "shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mort-

gages, and encumbrances." Section 39–5–18(D). And, not more.

### The Betterment Statute, Section 42–4–17

{28} I disagree with the manner in which the majority has applied the betterment statute. I believe the legislature intended that statute to apply in ejectment, where Plaintiff is legally entitled to possession of the premises.

{29} I see important distinctions which make these two statutes incompatible. Section 42–4–17 of the betterment statute gives the redeemer ten years from the date of purchase to pay purchaser for the value of his "improvements."

{30} The redemption statute does not even mention the word "improvements." Furthermore, the redeemer only has nine months-not ten years-in which to pay the foreclosure sale purchaser the statutory amount owed to him.

### Equity and Unjust Enrichment

{31} Unlike payments for outstanding taxes, interest and penalties, mortgages or encumbrances, the foreclosure sale purchaser, Mr. Reule, was not spending money to protect or preserve the real estate. He was spending money to improve the real estate, to make it more valuable. He spent Ten Thousand Dollars on the house in the first five weeks after purchasing it at the foreclosure sale. Was he trying to put the cost of the house improvements out of reach of the original owner who might try to redeem it?

{32} It is reasonable to assume that any foreclosure sale purchaser knows that the owner of the real estate would *not* have lost his property if he had the money to bring the mortgage payments, taxes, penalties and interest current. Such a purchaser knows that it will be difficult for that owner to raise sufficient funds to get his property back.

{33} The purchaser also knows that if he puts ten or twenty thousand dollars, or more, in "improvements" into the property, the would-be redeemer has no chance to ever get his property back because it has been placed farther outside his reach. "Equity" is defined as "Justice administered according to fairness as contrasted with the strictly formulated rules of common law." Black's Law Dictionary 540 (6th ed.1990). How do the concepts of equity and unjust enrichment fit into our system of justice in this case? Poorly, I believe.

{34} The majority may be more comfortable because there is only Ten Thousand Dollars worth of improvements in this case. What is to stop another court from invoking so-called equity if a purchaser makes $50,-0000 or $100,000 worth of "improvements?" Where do we draw the line?

{35} The majority is more concerned with any possible unjust enrichment of Redeemer than they are in forcing Redeemer to pay for so-called improvements he did not ask for and cannot afford. More important, these improvements are something Redeemer doesn't want, and the property doesn't need.

{36} Invoking the unjust enrichment concept in this case opens an avenue of abuse where the foreclosure sale purchaser has no limits on the improvements he can make to the property for which he can then demand reimbursement. The wisdom of the framers of the redemption statute is that they understood that we need a mechanism to limit the amount of extra costs and expenses a redeemer has to pay to get his property back.

{37} I respectfully dissent.